UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JODI KATZEFF, individually and on behalf of all others similarly situated,<br><br>  *Plaintiff,*<br><br>v.<br><br>TOYOTA OF DARTMOUTH, INC.,<br><br>  *Defendant.* | C.A. NO. 1:25-CV-12022-JEK |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF**
<u>**MOTION TO COMPEL ARBITRATION**</u>

Defendant Toyota of Dartmouth, Inc. ("Toyota of Dartmouth") submits this Memorandum of Law in support of its Motion to Compel Arbitration.

**I. INTRODUCTION**

On July 18, 2025, Plaintiff Jodi Katzeff filed this action against Toyota of Dartmouth, a motor vehicle dealership located in North Dartmouth, Massachusetts, alleging violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227. Plaintiff's claims are not properly before this Court and must be submitted to arbitration because she voluntarily entered two agreements that require her to arbitrate all disputes and claims with Toyota of Dartmouth arising from her use of the online lead-generation services AutoWeb, Inc. ("AutoWeb") and TrueCar, Inc. ("TrueCar"), which facilitated the contact between the parties. The agreements to arbitrate are set forth in the terms of use to which Plaintiff agreed when she registered and used the services of AutoWeb and TrueCar. Through her registration and use of those services, Plaintiff consented to being contacted by participating motor vehicle dealers, including Toyota of Dartmouth, and agreed to arbitrate any legal disputes arising from such contacts.

Both arbitration agreements entered by Plaintiff cover the claims raised in her Complaint against Toyota of Dartmouth. By using the AutoWeb service, Plaintiff agreed to arbitrate "any and all disputes and claims" with beneficiaries of the services made available by AutoWeb and arising from her use of the site. Declaration of Tatevik Davtyan ("Davtyan Aff."), Ex. A, pp. 13-14. Similarly, by submitting leads and requesting pricing from participating dealers using the TrueCar platform, Plaintiff agreed to arbitrate "any past, present, or future legal or equitable Claims," including "any dispute with Participating Dealers . . . that arises out of or relates in any way to Your relationship or interaction with TrueCar . . ." Affidavit of Micheal Shindle ("Shindle Aff."), Ex. A-2, p. 2, 7. Plaintiff's claims against Toyota of Dartmouth arise from her use of the AutoWeb and TrueCar services and are therefore subject to her agreement to arbitrate such claims.

In *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67-68, 76 (2010), the United States Supreme Court reaffirmed the core concept that arbitration agreements must be "enforce[d] according to their terms." *Id.* at 67. Therefore, where an arbitration agreement covers a dispute governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("FAA"), the resolution of that dispute is exclusively committed to the arbitral forum. With Plaintiff having entered into two separate agreements to arbitrate any claims against participating dealerships, there can be no doubt that this matter must be referred to arbitration under either or both of those agreements. Toyota of Dartmouth therefore requests that the Court compel Plaintiff to arbitrate her claims as she agreed and stay this action.

## II. BACKGROUND

Toyota of Dartmouth operates a retail motor vehicle dealership selling and leasing new and used motor vehicles from its dealership location in North Dartmouth, Massachusetts. Affidavit of Robert Zammito ("Zammito Aff."), ¶3. Toyota of Dartmouth is a party to agreements with

AutoWeb and TrueCar, which permit the dealership to advertise its vehicle inventory on the AutoWeb and TrueCar websites and receive contact information for consumers who have expressed interest in a particular vehicle within the dealership's inventory. *Id*., ¶ 7.

On April 18, 2024, AutoWeb notified Toyota of Dartmouth that Plaintiff Jodi Katzeff had expressed interest in a 2023 Toyota Camry and provided her telephone number to the dealership. *Id*., ¶ 9. Using the telephone number received from AutoWeb, Toyota of Dartmouth initiated contact with the Plaintiff through text messages. *Id*., ¶ 10.

On April 22, 2024, TrueCar notified Toyota of Dartmouth that Plaintiff had expressed interest in a 2024 Toyota Camry and provided her telephone number to the dealership. *Id*., ¶ 11. Toyota of Dartmouth subsequently attempted to initiate contact with the Plaintiff through text messages and telephone calls. *Id*., ¶ 12.

AutoWeb Terms of Use

In order for consumers to submit a lead form through the AutoWeb site, they must enroll with the site and agree to the AutoWeb Terms of Use. Davtyan Aff., ¶ 4. The process of registration is detailed in the Affidavit of Tatevik Davtyan, AutoWeb's Senior Vice President of Legal and Compliance. As set forth therein, AutoWeb's records indicate that Plaintiff submitted a lead form through the AutoWeb site on April 18, 2024. At that time, users submitting a lead form were presented with a TCPA consent statement that included a hyperlink to the Company's Terms of Use (the "AutoWeb Terms"). In order to complete the submission, users, including Plaintiff, were required to click a button affirmatively indicating their agreement to the AutoWeb Terms. Davtyan Aff., ¶¶ 4, 6.

3

The AutoWeb Terms in effect on the date that Plaintiff submitted her lead form through the AutoWeb site are attached as Exhibit A to the Davtyan Affidavit. The Terms provide, in relevant part:

> **TERMS OF USE**
>
> Last Updated: January 23, 2024
>
> By accessing, browsing and/or using the AutoWeb Websites, you acknowledge that you have read, understood, and agree, to be bound by these Terms of Use . . . If you do not agree to these Terms of Use, you are not authorized to use the AutoWeb Websites.
>
> \*\*\*
>
> **Agreement to Arbitrate**
>
> (a) **Autoweb, Inc. and you agree to arbitrate any and all disputes and claims between us arising out of or relating to these Terms of Use**, our Privacy Policy **or use of the sites**, via the sites or through mobile application, except any disputes or claims which under governing law are not subject to arbitration, to the maximum extent permitted by applicable law. These terms to arbitrate are intended to be broadly interpreted and to make all disputes and claims between us subject to arbitration to the fullest extent permitted by law.
>
> **This agreement to arbitrate otherwise includes**, but is not limited to **claims based in** contract, tort, warranty, **statute**, fraud, misrepresentation or any other legal theory; claims that arose before this or any prior Terms of Use (including, but not limited to, claims relating to advertising); claims that are currently the subject of purported class action litigation in which you are not a member of a certified class; claims relating to our websites; **claims arising out of or relating to the Telephone Consumer Protection Act**; claims relating to your data privacy or information security; and claims that may arise after the termination of these Terms of Use.
>
> \*\*\*
>
> **For purposes of this arbitration provision, references to "Autoweb, Inc.," "you," and "us" shall include** our respective parent entities, subsidiaries, affiliates, agents, employees, predecessors in interest, successors and assigns, websites of the foregoing, as well as **all authorized or unauthorized users or**

4

> **beneficiaries of services, products or information provided or made available under this or prior agreements between us relating to or arising from any aspect of your use or access of the sites**.

Davtyan Aff., Ex. A, pp. 13-14.

<u>TrueCar Terms of Service and Arbitration Agreement</u>

TrueCar's records indicate that Plaintiff submitted leads and requested pricing information from participating dealers for a new vehicle on April 22, 2024. Shindle Aff., ¶ 6. Plaintiff accessed TrueCar's platform through one of TrueCar's affinity partners, Farmers Insurance. *Id.* In order for consumers to use the TrueCar site, including those who access the site via Farmers Insurance, they must agree to the TrueCar Terms of Service, which include the True Car Arbitration Agreement. *Id.*, ¶¶ 4-6. This process is detailed in the Affidavit of Michael Shindle, TrueCar's Vice President of Technology.

As set forth therein, before they can submit a lead and receive pricing information from participating dealers on vehicles using TrueCar, individuals are taken to a specific webpage that presents (a) a hyperlink to a copy of the TrueCar Terms of Service (where the linked words "<u>Terms of Service</u>" are shown in underline) and (b) a checkbox next to a statement that reads; "I accept TrueCar's <u>Terms of Service</u> and <u>Privacy Policy</u>." Shindle Aff., ¶ 4. At that point, prospective users of the TrueCar platform have the opportunity to review the TrueCar Terms of Service before they click "Next" to proceed with submitting a lead and requesting pricing information from participating dealers. *Id.* It is not possible to submit a lead and request pricing information from participating dealers through the TrueCar platform without first agreeing to the TrueCar Terms of Service. *Id.,* ¶ 5. If an individual tried to click "Next" without having agreed to the Terms of Service, that individual would be unable to do so or otherwise submit a lead. This is also true of individuals, including Plaintiff, who access the TrueCar portal through Farmers Insurance. *Id.,* ¶

6. The TrueCar Terms of Service and TrueCar Arbitration Agreement in effect when Plaintiff submitted leads and requested pricing information from participating dealers on the TrueCar platform are attached as Exhibits A-1 and A-2, respectively, to the Shindle Affidavit.

Section 1 of the True Car Terms of Service is titled: "**ARBITRATION AGREEMENT AND WAIVER OF RIGHTS TO BRING COLLECTIVE ACTION,**" which is displayed in all caps and bold font. Shindle Aff., ¶ 9 and Ex. A-1, Sec. 1. That section states: "You and TrueCar agree to final and binding arbitration of all Claims (as defined in the Arbitration Agreement) before the American Arbitration Associate pursuant to the written <u>Arbitration Agreement</u>." (emphasis in original). *Id.*, Ex. A-1, Sec. 1. The term "Arbitration Agreement" is underlined and includes a hyperlink that opens a new page displaying the TrueCar Arbitration Agreement. *Id.*

The TrueCar Arbitration Agreement provides, in relevant part:

> TrueCar, Inc. Arbitration Agreement
>
> Please read this agreement carefully—it affects your rights.
>
> By your access to or use of the TrueCar websites or mobile applications (collectively, the "Website") and/or any service offered through them or referenced in the Terms of Service, **You (defined below) and TrueCar (defined below) agree to the terms and conditions of this Arbitration Agreement** ("Arbitration Agreement" or "Agreement")(emphasis added).
>
> \*\*\*
>
> 2. Formal Resolution.
>
> If we cannot resolve a Claim informally, and if either of us wishes to pursue the dispute, then we will formally resolve any Claim that either of us asserts under the following agreed procedure and rules.
>
> Except as noted in Section 2.k, **TrueCar and You agree that any and all Claims (defined below) shall be submitted to final, binding, and confidential Arbitration before the American Arbitration Association** . . . (emphasis added).

>\*\*\*
>
>5. Who Can Enforce this Arbitration Agreement?
>
>Consistent with the definition of Claims in Section 7 below, **You and TrueCar agree that Participating Dealers** and Affinity Partners **are intended to be third party beneficiaries to this Arbitration Agreement and that the terms of our Agreement will also inure to the benefit of Participating Dealers** and Affinity Partners. **This means that—in addition to You and TrueCar—Participating Dealers and Affinity Partners will be able to enforce this Agreement in the event of a dispute between You and one of TrueCar's participating Dealers** or Affinity Partners. (emphasis added).
>
>\*\*\*
>
>7. Definitions.
>
> \*\*\*
>
>**"Claims" means any and all disputes, claims and/or causes of action arising out of or relating in any way to Your dealings or relationship with TrueCar** including, but not limited to, **Your access to or use of the TrueCar Website, and/or any service offered through it**, advertising on the Website, and/or Your purchase of any vehicle in connection with the use of Your TrueCar account. **The foregoing definition of Claims specifically includes any dispute with Participating Dealers** and Affinity Partners **that arises out of or relates in any way to Your relationship or interaction with TrueCar**, and in this regard Participating Dealers and Affinity Partners are third-party beneficiaries of this Arbitration Agreement. (emphasis added).
>
>**"Participating Dealers" means any new and/or used automobile dealer that participates in the TrueCar network.** (emphasis added).

Shindle Aff., Ex. A-2.

On July 18, 2025, Plaintiff filed her Complaint in this action against Toyota of Dartmouth alleging that it violated the Telephone Consumer Protection Act by, among other things, contacting

7

her without her consent and/or after she had withdrawn her consent to be contacted. *See* Complaint (ECF No. 1), ¶¶ 16, 18, 33, 34, 66, 67, 73, 74).

**III.   THIS DISPUTE SHOULD BE RESOLVED IN ARBITRATION, AS AGREED BY THE PARTIES.**

   **A. The Federal Arbitration Act ("FAA") Governs Each of the Arbitration Agreements Entered by Plaintiff.**

Federal law declares a liberal policy favoring the enforcement of arbitration agreements. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346 (2011). The FAA provides, in relevant part:

> A written provision in … a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction … shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract . . . .

9 U.S.C. § 2.

In enacting the FAA, Congress sought to overcome widespread judicial hostility to the enforcement of arbitration agreements. *Hall St. Assocs., LLC v. Mattel, Inc.*, 552 U.S. 576, 581 (2008); *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006) (explaining that the FAA was enacted "[t]o overcome judicial resistance to arbitration"). Thus, the FAA is designed "to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983). To this end, the FAA not only places arbitration agreements on equal footing with other contracts but amounts to a "congressional declaration of a liberal federal policy favoring arbitration agreements." *Perry v. Thomas*, 482 U.S. 483, 489 (1987).

The FAA governs the arbitration agreements within the AutoWeb Terms and the TrueCar Arbitration Agreement to which the Plaintiff agreed.  First, each agreement explicitly invokes the FAA.  The AutoWeb Terms provide:

8

> These Terms evidence a transaction in interstate commerce, and thus the Federal Arbitration Act governs the interpretation and enforcement of this arbitration provision.

Davtyan Aff., Ex. A, p. 15.

Likewise, the TrueCar Arbitration Agreement states:

> f.   TrueCar and You agree that Your access to or use of the Website and/or any service offered through it has an effect on interstate commerce. Therefore, TrueCar and You agree that this Arbitration Agreement shall be construed and interpreted under the Federal Arbitration Act, 9 U.S.C. Section 1, et. seq.

Shindle Aff., Ex. A-2, Section 2(f).

Second, as the parties explicitly recognized in the terms quoted above, the services offered by AutoWeb and TrueCar and those offered by their participating motor vehicle dealerships affect interstate commerce, thereby bringing the arbitration agreements within the scope of the FAA. *See* 9 U.S.C. § 2. The AutoWeb and TrueCar websites allow customers to shop for and purchase motor vehicles from any location in the United States and connect customers with auto dealers located across the country.

The participating dealers who display their vehicle inventories and are connected to customers through the AutoWeb and TrueCar sites - including Toyota of Dartmouth - are also engaged in businesses that affect interstate commerce. Toyota of Dartmouth operates a retail motor vehicle dealership selling and leasing new and used motor vehicles to many customers who reside outside of Massachusetts, where the dealership is based. Zammito Affidavit, ¶¶ 3, 4. Toyota of Dartmouth purchases its new car inventory from an overseas manufacturer, Toyota Motor Corporation, through its U.S. distributor. *Id.*, ¶ 5. That inventory is transported across state lines for delivery to Toyota of Dartmouth's dealership. *Id.* The dealership also purchases its used car inventory from a variety of dealers, auctions, and customers located within and outside of Massachusetts. *Id.*, ¶ 6.

Because the arbitration agreements contained within the AutoWeb Terms and TrueCar Arbitration Agreement explicitly reference the FAA and concern transactions involving interstate commerce, the FAA governs those agreements. *See* 9 U.S.C. § 2.

### B. The Arbitrator, Rather than the Court, Must Decides the Gateway Issues.

Normally, in deciding whether to compel arbitration, the court is charged with determining two "gateway" issues: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002). However, there is an exception to this general rule when "the parties clearly and unmistakably provide otherwise," including by agreeing to delegate those issues to an arbitrator. *AT&T Techs., Inc. v. Communications Workers of America*, 475 U.S. 643, 649 (1986). In such cases, the court examines the underlying contract to determine whether the parties have agreed to commit the question of arbitrability to the arbitrator.[1] *Rent-A-Center, West*, 561 U.S. at 70 ("An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other.").

Through the AutoWeb Terms, the parties clearly and unmistakably agreed that:

> All issues are for the arbitrator to decide, including the scope and enforceability of this arbitration provision as well as other terms and conditions of these Terms of Use, and the arbitrator shall have exclusive authority to resolve any such dispute relating to the scope and enforceability of this arbitration provision or any other term of these Terms of Use, including, but not limited to any claim that all

---

[1] An additional gateway issue in this case is that Plaintiff consented through the AutoWeb Terms and TrueCar Terms of Service to be contacted by participating dealerships, including Toyota of Dartmouth. *See* Davtyan Aff., Ex. A, p. 2, 18-19; Shindle Aff., Ex. A-1, Section 5. This gateway issue should also be decided by the arbitrator. However, if this Court determines that the claims are not subject to arbitration, Toyota of Dartmouth reserves the right to file a motion seeking dismissal of Plaintiff's claims pursuant to FRCP 12, 56, or any other applicable Rule."

10

> or any part of this arbitration provision or these Terms of Use are void or voidable.

Davtyan Aff., Ex. A, subsection (c), p. 16.

> Similarly, the TrueCar Arbitration Agreement provides:
>
> c.     Our agreement to submit all Claims to arbitration includes all disputes or questions about arbitrability, all claims for temporary, injunctive, or declaratory relief, and all claims arising under any federal or state statute, rule, or regulation.

Shindle Aff., Ex. A-2, Section 2(c).

The United States Supreme Court has held delegation provisions like these to be enforceable and require that the arbitrator — and not a court — decides the gateway issues. *Rent-A-Center, West*, 561 U.S. at 68, 70, 76. When the parties' contract delegates the arbitrability question to an arbitrator—as they have done here—a court may not override the contract. *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 67-68 (2019); *Liu v. Equifax Info. Servs.*, No. 22-cv-10638-ADB, 2024 WL 308089, at *7 (D. Mass. Jan. 26, 2024). In those circumstances, a court possesses no power to decide the arbitrability issue. *Henry Schein, Inc.*, 586 U.S. at 68; *Liu*, 2024 WL 308089, at *7. This "is true even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless." *Henry Schein, Inc.*, 586 U.S. at 68; *Liu*, Civil Action 2024 WL 308089, at *7. Based on these decisions and the United States Supreme Court's controlling decision in *Rent-A-Center, West*, any challenges to the enforceability or validity of the arbitration agreement must be submitted to arbitration. Therefore, if Plaintiff has any challenges to the enforceability or applicability of the Arbitration Agreement, the Court should compel arbitration and permit the arbitrator to resolve any challenge.

### C. The Arbitration Agreement is Enforceable and Covers Plaintiff's Claims

Because all issues of enforceability and arbitrability are committed to arbitration, it would not be appropriate for the Court to rule on any challenges to the validity of the Arbitration

11

Agreement. *See Rent-A-Center, West, Inc.*, 561 U.S. at 72. If, however, the Court addresses those issues, the outcome is the same: Plaintiff must arbitrate.

### i. The Arbitration Agreement is Valid and Enforceable.

Courts "apply ordinary state-law principles that govern the formation of contracts" when determining the validity of an arbitration agreement. *Boateng v. Gen. Dynamics Corp.*, 473 F. Supp. 2d 241, 247-48 (D. Mass. 2007) (quoting *Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 170 F.3d 1, 19 (1st Cir. 1999)). Under Massachusetts law, electronically presented agreements are enforceable provided there is "[r]easonably conspicuous notice of the existence of contract terms and unambiguous manifestation of assent to those terms.'" *Dixon v. Michael Kors Retail, Inc.*, 468 F. Supp. 3d 409, 411 (D. Mass. 2020) (quoting *Cullinane v. Uber Techs., Inc.*, 893 F.3d 53, 61 (1st Cir. 2018)). Unambiguous assent does not require a signature, written or electronic, and "clicking a box on a computer screen" can be sufficient. *See id.* at 412 (quoting *Campbell v. Gen. Dynamics Gov't Sys. Corp.*, 407 F.3d 546, 557 (1st Cir. 2005)). Here, the AutoWeb Terms and True car Arbitration Agreement meet these requirements.

At the time that Plaintiff used the AutoWeb site, users who wished to submit a lead form were presented with a TCPA consent statement that included a hyperlink to the AutoWeb Terms. In order to complete the submission, users, including Plaintiff, were required to click a button affirmatively indicating their agreement to the AutoWeb Terms, which contains the Agreement to Arbitrate. Davtyan Aff., ¶¶ 4, 6 and Ex. A, pp. 13-14.

The TrueCar Terms of Service and Arbitration Agreement likewise provide reasonably conspicuous notice of the existence of contract terms. As set forth in the Shindle Affidavit, it is not possible for an individual to submit a lead and request pricing information from participating dealers through the TrueCar platform without agreeing to the TrueCar Terms of Service, which

include the TrueCar Arbitration Agreement. Shindle Aff., ¶ 5. The phrase "Terms of Service" is displayed as an underlined term on the site's registration page and can be accessed through a hyperlink. *Id*., ¶ 4. Users seeking to register with TrueCar must click a checkbox next to a statement that says: "I accept TrueCar's Terms of Service and Privacy Policy" and those users have the opportunity to review the Terms of Service before clicking "Next" to proceed with their registration. *Id.* This process demonstrates that Plaintiff was put on reasonable notice of the TrueCar Terms of Service and affirmatively agreed to be bound by those Terms, including the TrueCar Arbitration Agreement, when used the TrueCar platform.

Through their voluntary participation and interaction with the AutoWeb and TrueCar sites, Plaintiff and Toyota of Dartmouth each agreed to submit any related disputes to arbitration. Such bilateral promises "constitute[] independent mutual consideration." *Soto-Fonalledas v. Ritz-Carlton San Juan Hotel Spa & Casino*, 640 F.3d 471, 475 (1st Cir. 2011). The fact that Plaintiff accepted and agreed to the AutoWeb Terms and TrueCar Terms of Service electronically is no barrier to their enforcement as valid contracts. *See Campbell*, 407 F.3d at 557 ("Signing an acknowledgment or, in a more modern context, clicking a box on a computer screen, are acts associated with entering into contracts. Requiring an affirmative response of that sort would have signaled that the Policy was contractual in nature").

Because Plaintiff's electronic acceptance of the AutoWeb Terms and TrueCar Terms of Service was unambiguous, each agreement is valid and binding. If the Court determines that even one of those agreements is enforceable, then it must refer this matter to arbitration.

    **ii. The AutoWeb Terms and TrueCar Arbitration Agreement Cover Plaintiff's Claims.**

As stated above, the gateway issue of whether the AutoWeb Terms and TrueCar Arbitration Agreement cover Plaintiff's claims has been delegated to the arbitrator by agreement.

13

However, if the Court nevertheless reviews the scope and applicability of each agreement, it is clear that the agreements require Plaintiff to arbitrate her claims under the TCPA against Toyota of Dartmouth.

The Agreement to Arbitrate within the AutoWeb Terms applies to "any and all disputes and claims between us arising out of or relating to these Terms of Use . . . or use of the sites." Davtyan Aff., Ex. A, subsection (a), pp. 13. The term "us" is defined to include "all authorized or unauthorized users or **beneficiaries of services**, products or information provided or **made available under this or prior agreements between us relating to or arising from any aspect of your use or access of the sites**." *Id.*, p. 14. The AutoWeb terms further specify that the agreement to arbitrate includes claims based in statute and claims arising out of or relating to the Telephone Consumer Protection Act. *Id.*

Plaintiff's claims under the TCPA arise from her use of the AutoWeb site, which caused her to be connected to Toyota of Dartmouth concerning her potential interest in purchasing a vehicle in the dealership's inventory that was listed on the site. Zammito Aff., ¶¶ 9-10. Toyota of Dartmouth, as a participating dealer listing its inventory on the AutoWeb site, is a beneficiary of the services arising from Plaintiff's use of the site and is therefore included within the definition of parties that are bound by the terms of the arbitration agreement. Plaintiff's claims that Toyota of Dartmouth contacted her without consent (Complaint, ¶¶ 33, 34, 66, 67) and/or after her consent had been withdrawn (Complaint, ¶¶ 16, 18, 73, 74) in violation of the TCAP therefore arise from her use of the AutoWeb site, which facilitated the contact between the parties.

The TrueCar agreement likewise covers Plaintiff's claims. The agreement applies to "any and all Claims", which are defined to include "any dispute with Participating Dealers and Affinity Partners that arises out of or relates in any way to Your relationship or interaction with TrueCar."

Shindle Aff., Ex. A-2, Sections 2(b), 7. Again, Plaintiff's contact with Toyota of Dartmouth, a Participating Dealer, arose from her use of and interaction with the TrueCar site, which facilitated the contact with the dealership.

Plaintiff's TCPA claims against Toyota of Dartmouth are therefore covered by the AutoWeb and TrueCar agreements.

### D. The Action Should be Stayed Pending Arbitration.

Section 3 of the FAA requires the Court to stay a pending action that is properly subject to arbitration upon the application of the one of the parties to the arbitration agreement:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

*See* 9 U.S.C. § 3. Accordingly, the Court should stay this matter until the parties have completed arbitration.

## IV. CONCLUSION

For the reasons set forth herein, the Court should compel Plaintiff Jodi Katzeff to arbitrate her claims against Defendant Toyota of Dartmouth, Inc. Through her registration with and use of the AutoWeb and TrueCar sites, Plaintiff agreed on two sperate occasions that disputes with motor vehicle dealers arising from her use of those sites would be subject to binding arbitration. Toyota of Dartmouth therefore requests that the Court ALLOW its Motion to Compel Arbitration, compel Plaintiff to arbitrate her claims under the TCPA as she agreed, and stay this action pending arbitration.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | TOYOTA OF DARTMOUTH, INC., |
|  | By its attorney |
|  | */s/ James F. Radke*<br>James F. Radke, BBO #667299<br>Harris Beach Murtha Cullina LLP<br>33 Arch Street, 12th Floor<br>Boston, MA 02110<br>617.457.4000 |
| DATED:  September 30, 2025 | jradke@harrisbeach.com |

## **CERTIFICATE OF SERVICE**

      I, James F. Radke, do hereby certify that on September 30, 2025, I filed this document through the ECF system which will send the document electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

                                                             */s/ James F. Radke*
                                                             James F. Radke