UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JODI KATZEFF, individually and on behalf of all others similarly situated,<br><br>  *Plaintiff,*<br><br>v.<br><br>TOYOTA OF DARTMOUTH, INC.,<br><br>  *Defendant.* | C.A. NO. 1:25-CV-12022 |

## **DECLARATION OF MICHAEL SHINDLE**

  1. My name is Michael Shindle. I am over twenty-one years of age and suffer from no legal disability. I have personal knowledge of the matters set forth herein based on my position with the business, my knowledge of company policies and procedures, and my review of the relevant documents, and am otherwise qualified to make this statement.

  2. I first joined TrueCar, Inc. in November 2023 and have been continuously employed by the company since then. Today, I serve as Vice President, Technology, at TrueCar.

  3. My responsibilities include overseeing the technological development and management of TrueCar's online platform. As part of my job, I regularly access the TrueCar website at www.truecar.com and interact with the TrueCar user experience, including the content of the step-by-step registration and lead-submission process, prompts, messages, and other content that consumers see when interacting with TrueCar websites. I also interact routinely with TrueCar employees who are responsible for maintaining and updating the content of the TrueCar website.

  4. In particular, I am familiar with the process through which individuals accept and agree to the TrueCar Terms of Service that govern the services that TrueCar provides. Before they

1

can submit a lead and receive pricing information from participating dealers on vehicles in their area, individuals are taken to a specific webpage that presents (a) a hyperlink to a copy the TrueCar Terms of Service (where the linked words "Terms of Service" are shown in underline) and (b) a checkbox next to a statement that reads "Please accept TrueCar's Terms of Service and Privacy Policy." At this point, prospective users of TrueCar's platform have the opportunity to review the TrueCar Terms of Service, before they click "Next" to proceed with submitting a lead and requesting pricing information from participating dealers.

5.  Based on the practical and technological reality, it is impossible for an individual to submit a lead and request pricing information from participating dealers through the TrueCar platform, without first agreeing to the TrueCar Terms of Service. If an individual tried to click "Next" without having agreed to the Terms of Service, that individual would be unable to do so or otherwise submit a lead.

6.  According to TrueCar's records, an individual named Jodi Katzeff submitted leads requesting pricing information from participating dealers for a new vehicle on April 22, 2024. Ms. Katzeff accessed TrueCar's platform through one of TrueCar's affinity partners, Farmers Insurance. The TrueCar lead-submission and acceptance-of-terms process that I described above in paragraphs 4 and 5, however, is the same for individuals accessing TrueCar's platform via Farmers Insurance.

7.  For instance, https://www.truecar.com/terms and https://farmers.truecar.com/terms/ will link to and display the same exact copy of the TrueCar Terms of Service, and www.truecar.com/arbitration and https://farmers.truecar.com/arbitration/ will link to and display the same exact copy of the TrueCar Arbitration Agreement. In other words, the Terms of Service and Arbitration Agreement that individuals agree to when they submit a lead

and request pricing information from participating dealers are identical, regardless of whether the user accesses the TrueCar platform directly or via the Farmers Insurance portal.

8. The webpage that Ms. Katzeff was shown, and navigated through, when she submitted a lead and requested pricing information for a new vehicle from TrueCar participating dealers via Farmers Insurance had the language and features described above in paragraph 4. A substantially similar exemplar of what that specific webpage presentation would have looked like in April 2024 has been recreated and included here:



9. The Terms of Service that were in effect in April 2024 when Ms. Katzeff submitted leads and requested pricing information from participating dealers on the TrueCar platform are attached hereto as **Exhibit A-1.** In Section 1 of the Terms of Service, there is a section in all caps and bold that states: "**ARBITRATION AGREEMENT AND WAIVER OF RIGHT TO BRING COLLECTIVE ACTION**" and "PLEASE READ THIS ARBITRATION AGREEMENT CAREFULLY." This section also included a hyperlink to the "Arbitration Agreement," which will open up a copy of the TrueCar Arbitration Agreement.

10. The TrueCar Arbitration Agreement that was in effect in April 2024 is attached hereto as **Exhibit A-2.**

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 30, 2025

Michael Shindle

## **CERTIFICATE OF SERVICE**

      I, James F. Radke, do hereby certify that on September 30, 2025, I filed this document through the ECF system which will send the document electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

                                      */s/ James F. Radke*
                                      James F. Radke