### UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **JODI KATZEFF,** individually and on behalf of all others similarly situated, *Plaintiff(s),* **v.** **TOYOTA OF DARTMOUTH, INC.,** *Defendant.* | Case No.: 1:25-CV-12022-JEK |

### PLAINTIFF'S RESPONSE IN OPPOSITION
### TO DEFENDANT'S MOTION TO COMPEL ARBITRATION

Plaintiff Jodi Katzeff ("Plaintiff" or "Ms. Katzeff") respectfully submits this Response in Opposition to Defendant Toyota of Dartmouth, Inc.'s ("Defendant") Motion to Compel Arbitration, ECF Nos. 10-14, for the reasons set forth herein.

### I.    INTRODUCTION

Defendant has not shown that Plaintiff agreed to arbitrate anything. The record demonstrates that Defendant purchased Plaintiff's contact information from two lead generators and now attempts to bootstrap arbitration clauses from two websites that did not give Plaintiff reasonably conspicuous notice or require her unambiguous assent.

AutoWeb's "Terms of Use" are presented through general hyperlinks and a lengthy document that a user could proceed past without any acknowledgment of arbitration. *See* ECF No. 13-1. TrueCar's flow goes a step further: a single checkbox referencing "Terms of Service and Privacy Policy" gates progress, but the operative arbitration provisions are not visible within those hyperlinks. Indeed, they are reached only by clicking into the Terms and then following a second, in-text hyperlink labeled "Arbitration Agreement," presented in the same font and appearance as

surrounding text. ECF Nos. 14-1, 14-2. Nothing at the point of submission states that by providing a phone number the user is agreeing to arbitrate claims with an unidentified dealership.

Plaintiff's sworn testimony aligns with the interfaces themselves. Ms. Katzeff explains that she used these sites to browse inventory or obtain a quote, not to enter a dispute-resolution contract; she did not perceive any conspicuous disclosure of arbitration; and she would not have understood that checking a box to proceed or entering her contact information meant waiving her right to a judicial forum. Katzeff Decl. ¶¶ 3–18. The documents Defendant cites likewise do not identify Toyota of Dartmouth as a contracting counterparty or as an expressly intended third-party beneficiary. ECF Nos. 13-1, 14-1, 14-2. On this record, Defendant cannot carry its burden to prove contract formation, establish any basis to enforce an agreement as a non-signatory, or avoid the requirement that assent be clearly and conspicuously obtained.

This Motion should be denied.

## II.  **BACKGROUND**

Americans are subject to billions of unwanted telemarketing calls per year. *See In re Call Authentication Trust Anchor*, 36 FCC Rcd. 8827, 8832 n. 41 (May 21, 2021) ("March 2021 saw a record number of 'spam' calls, reaching 6.3 billion, greater than the previous monthly high in October 2020 of 6.1 billion and on pace to exceed 70 billion calls in 2021.") (internal citations omitted). Many of these unwanted solicitations stem from the lead generation industry, which uses unscrupulous tactics to harvest and resell consumer contact information. Said differently, lead generators act as middlemen, capturing contact information and then providing those "leads" to third-party businesses that then badger consumers.[1]

---

[1] *See* Fed. Trade Comm'n, Staff Perspective: "Follow the Lead" Workshop 2 (Sept. 2016), https://www.ftc.gov/system/files/documents/reports/staff-perspective-follow-the-lead/staff_perspective_follow_the_lead_workshop.pdf.

Such is the case here. Defendant purchased Plaintiff's contact information from two third-party lead generation companies: AutoWeb, LLC, at autoweb.com ("AutoWeb"), and TrueCar, Inc., at farmers.truecar.com ("TrueCar"). *See* Aff. Robert Zammito at ¶¶ 7-12, ECF No. 12 [hereinafter Zammito Aff.]. Contrary to Defendant's assertions, Plaintiff did *not* agree to arbitrate her claims against Defendant through either website.

### A. Ms. Katzeff Did Not Knowingly Assent to AutoWeb's Terms of Use or Agreement to Arbitrate.

Defendant argues that Ms. Katzeff agreed to arbitration through AutoWeb's website but carefully omits an image of the webform Ms. Katzeff would have seen on autoweb.com. *See generally* Def.'s Mem. L. Supp. Mot. Compel Arb. at 2-7, ECF No. 11 [hereinafter Def.'s MTCA]; Decl. Tatevik Davtyan, ECF No. 13 [hereinafter Davtyan Decl.]. This webform through which AutoWeb presently collects consumer telephone numbers is pictured below:



Decl. Plf. Jodi Katzeff Support Plf.'s Resp. Opp'n Def.'s Mot. Compel Arb. at ¶ 5 [hereinafter Katzeff Decl.]. Ms. Katzeff does not dispute that she visited autoweb.com on April 18, 2024,

though she cannot remember whether she submitted her information on this website. Katzeff Decl. at ¶¶ 3-4.

Ms. Katzeff does, however, maintain that the disclosure language in the webform is inconspicuous, such that she would have been unaware that she was agreeing to be bound by AutoWeb's Terms of Use and Agreement to Arbitrate by submitting her information. *Id.* at ¶ 6. Ms. Katzeff would have thought that submitting her information would have enabled her to browse AutoWeb's deals, not that she opened the door to be harassed by Defendant's telemarketing calls and texts. *Id.* at ¶ 7.

AutoWeb's Terms of Use contain an Agreement to Arbitrate, found beginning on page 13. Ex. A: AutoWeb's Terms of Use at 13, ECF No. 13-1. The Agreement to Arbitrate is governed by the American Arbitration Association ("AAA") and covers "claims arising out of or relating to the Telephone Consumer Protection Act[.]" *Id.* at 14. It further indicates that—

> references to "AutoWeb, Inc.," "you," and "us" shall include  our respective parent entities, subsidiaries, affiliates, agents, employees, predecessors in interest, successors and assigns, websites of the foregoing, as well as all authorized or unauthorized users or beneficiaries of services, products or information provided or made available under this or prior agreements between us relating to or arising from any aspect of your use or access of the sites.

*Id.*

**B.    Ms. Katzeff Did Not Knowingly Agree to Receive Telemarketing Calls from Defendant, or to Arbitrate Her Claims with Defendant, Through TrueCar's Website.**

Similarly, Ms. Katzeff does not dispute that she visited farmers.truecar.com on April 22, 2024, though she cannot remember whether she submitted her personal information on this website. Katzeff Decl. at ¶¶ 8-9. Below is an image of the webform through which TrueCar collects consumer telephone numbers:



*Id.* at ¶ 10; *see also* Shindle Decl. at ¶ 8, ECF No. 14.

Ms. Katzeff maintains that the disclosure language in this webform is inconspicuous. *Id.* at ¶ 12. Specifically, Ms. Katzeff would not have known that by submitting her information, she was authorizing Defendant to send her telemarketing calls and texts and agreeing to arbitrate her claims against Defendant. *Id.* Instead, Ms. Katzeff would have thought that submitting her information would allow her to obtain a quote for a vehicle or to see local inventory. *Id.* at ¶ 13.

Though the TrueCar webform requires users to check a box to consent to their Terms of Service and Privacy Policy, the terms of the Arbitration Agreement are far from obvious. *Id.* at ¶¶ 14-15. If Ms. Katzeff had clicked the hyperlink to access the Terms of Service, she would have encountered a single paragraph on arbitration with an embedded hyperlink to an *additional* Arbitration Agreement, as shown below:

## TrueCar Terms of Service

CONTACT
TrueCar, Inc.
5 Santa Monica Blvd, 12th Floor
Santa Monica, CA 90401
888-TRUECAR

By accessing or using this website, any of its pages and/or any of the services referenced herein, you accept and agree to be bound by the Terms of Service set forth below.

1. ARBITRATION AGREEMENT AND WAIVER OF RIGHT TO BRING COLLECTIVE ACTION.

You and TrueCar agree to final and binding arbitration of all Claims (as defined in the Arbitration Agreement) before the American Arbitration Association pursuant to the written Arbitration Agreement (the "Arbitration Agreement"). PLEASE READ THE ARBITRATION AGREEMENT CAREFULLY. IT AFFECTS YOUR RIGHTS, AND THOSE TO WHOM YOU PROVIDE ACCESS TO YOUR ACCOUNT. THE AGREEMENT TO ARBITRATE ALL CLAIMS IS A CONDITION OF YOUR USE OF THE TRUECAR WEBSITE AND/OR ANY OF THE SERVICES REFERENCED HEREIN.

2. CHOICE OF LAW.

Except as otherwise expressly provided in the TrueCar Arbitration Agreement (which applies the Federal Arbitration Act), the relationship between you and TrueCar are governed by the laws of the State of California without regard to its conflict/choice of law provisions.

3. ACCEPTANCE OF TERMS.

TrueCar, Inc. ("TrueCar," "we," "us," or "our") provides users with an online automotive information and communications platform, as well as related services that can be accessed from or through this website (collectively, "Services"). Please carefully read these Terms of Service before using the Services. By accessing or using the Services, including this website, you accept and agree to be bound by these Terms of Service ("Terms of Service") and all applicable laws, rules, and regulations associated with your use of the Services. If you do not agree to the Terms of Service, you are not authorized to use this website or the Services. These Terms of Service also apply to any co-branded or framed version of this website.

Your use of certain materials and features of this website and/or the Services may be subject to additional terms and conditions which are incorporated herein by reference and become part of the Terms of Service. By using

*Id.* at ¶ 15; *see also* Ex. A-1: TrueCar Terms of Service at 2, ECF No. 14-1. The hyperlinked "Arbitration Agreement" is shown in black underlined text in the same font, size, and type as the surrounding text. Because the hyperlinked text blends into the surrounding text, Ms. Katzeff would not have noticed it. Katzeff Decl. at ¶ 16.

The Arbitration Agreement provides that "[b]y your access to or use of the TrueCar websites or mobile applications . . . and/or any service offered through them or referenced in the Terms of Service," the user agrees to be bound by its terms. Ex. A-2: TrueCar Arbitration Agreement at 2, ECF No. 14-2. The Arbitration Agreement is governed by the AAA and "submit[s] all Claims to arbitration includ[ing] all dispute or questions about arbitrability, all claims for temporary, injunctive, or declaratory relief, and all claims arising under any federal or state statute, rule, or regulation." *Id.* at ¶¶ 2(b)-(c). This Agreement also requires claims to be brought individually and waives the parties' rights to a jury trial. *Id.* at ¶¶ 2(c), (e). Finally, the Agreement discusses which parties have the power of enforcement:

> You and TrueCar agree that Participating Dealers and Affinity Partners are intended to be third party beneficiaries to this Arbitration Agreement and that the terms of our Agreement will also inure to the benefit of Participating Dealers and Affinity Partners. This means that—in addition to You and TrueCar—Participating Dealers and Affinity Partners will be able to enforce this Agreement in the event of a dispute between You and one of TrueCar's participating Dealers or Affinity Partners.
>
> . . .
>
> "Participating Dealers" means any new and/or used automobile dealer that participates in the TrueCar network.

*Id.* at ¶¶ 5, 7. Notably absent from the webform, the Terms of Use, and the Arbitration Agreement, however, is any mention of Defendant or a list of Participating Dealers. *See* Shindle Decl. at ¶ 8, ECF No. 14; Katzeff Decl. at ¶ 14; *see generally* Ex. A-1: TrueCar Terms of Service, ECF No. 14-1; Ex. A-2: TrueCar Arbitration Agreement, ECF No. 14-2.

## III.    LEGAL STANDARD

Under the Federal Arbitration Act ("FAA"), "[a] written provision . . . in a contract . . . to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable." *Cullinane v. Uber Techs., Inc.*, 893 F.3d 53, 60 (1st. Cir. 2018) (quoting 9 U.S.C. § 2 (2012)). However, the "FAA does not require parties to arbitrate when they have not agreed to do so." *Id.* (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 478 (1989)). Therefore, though the FAA reflects "a federal liberal policy favoring arbitration agreements[,]" *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346 (2011) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)), that principle presupposes that such an agreement actually exists. *See Hogan v. SPAR Grp., Inc.*, 914 F.3d 34, 38 (1st Cir. 2019).

That said, "[a] party seeking to compel arbitration 'must demonstrate that a valid agreement to arbitrate exists, that the movant is entitled to invoke the arbitration clause, that the other party

is bound by that clause, and that the claim asserted comes within the clause's scope.'" *Nat'l Fed'n of the Blind v. The Container Store, Inc.*, 904 F.3d 70, 79-80 (1st Cir. 2018) (quoting *Soto-Fonalledas v. Ritz-Carlton San Juan Hotel Spa & Casino*, 640 F.3d 471, 474 (1st Cir. 2011)).

And in ruling on a motion to compel arbitration, the First Circuit has instructed the district courts to apply the summary judgment standard. *Air-Con, Inc. v. Daikin Applied Latin Am., LLC*, 21 F.4th 168, 174-75 (1st Cir. 2021). This requires the court to "construe the record in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Id.* at 175. Therefore, "[i]f the non-moving party puts forward materials that create a genuine issue of fact about a dispute's arbitrability, the district court 'shall proceed summarily' to trial to resolve that question." *Id.* (citing 9 U.S.C. § 4).

## IV.  DEFENDANT'S MOTION TO COMPEL ARBITRATION SHOULD BE DENIED BECAUSE THERE WAS NO MUTUAL ASSENT AND DEFENDANT IS NOT A THIRD-PARTY BENEFICIARY TO EITHER AGREEMENT.

### A.  This Court Should Decide Whether an Arbitration Agreement Exists.

In deciding a motion to compel arbitration, the Court must first determine (1) whether "there exists a written agreement to arbitrate," (2) whether "the dispute falls within the scope of that arbitration agreement" and (3) whether "the party seeking an arbitral forum has not waived its right to arbitration." *Gove v. Career Sys. Dev. Corp.*, 689 F.3d 1, 4 (1st Cir. 2012) (internal quotations omitted).

Regarding who must decide, the "issue of the contract's validity is different from the issue whether any agreement between the alleged obligor and obligee was ever concluded." *Buckeye*

8

*Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 n.1 (2006). "The issue of whether an arbitration agreement was formed between the parties must always be decided by a court, regardless of whether the alleged agreement contained a delegation clause." *Fedor v. United Healthcare, Inc.*, 976 F .3d 1100, 1105 (10th Cir. 2020); *see also Granite Rock Co. v. Int'l Brotherhood of Teamsters*, 561 U.S. 287, 295 (2010) ("[W]here the dispute at issue concerns contract formation, the dispute is generally for courts to decide."). Indeed, "whether the parties have a valid arbitration agreement at all is for the court, not the arbitrator, to decide." *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003). "After all, parties cannot delegate disputes over whether an agreement even exists between them (for the very reason that there is a dispute about whether an agreement existed in the first place)." *Newman v. Plains All Am. Pipeline, L.P.,* 23 F.4th 393, 398 (5th Cir. 2002).

### B.    The Plaintiff Does Not Concede That She Visited the Website at Issue.

"Arbitration is a matter of consent, not coercion." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 664 (2010). Despite the liberal policy favoring arbitration, "consent" remains the "first principle that underscores" all arbitration decisions. *Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 184 (2019). Consent is essential under the FAA because arbitrators wield only the authority they are given. *Id.*

Plaintiff Jodi Katzeff's declaration demonstrates that no agreement to arbitrate was ever formed because she did not knowingly consent to any arbitration provision. Ms. Katzeff explains that she cannot recall whether she submitted her phone number or other personal information there. Katzeff Decl. at ¶¶ 3–5. After reviewing a screenshot of the AutoWeb webform, she attests that the disclosure language was not conspicuous and that she would not have understood that by entering her information she was agreeing to any terms of use or arbitration provision. *Id.* at ¶¶ 6–7. She

further explains that she would have expected to be able to browse vehicle deals after submitting her phone number, not to receive telemarketing calls or messages, and certainly not from Toyota of Dartmouth. *Id*. at ¶ 8.

Similarly, Ms. Katzeff explains that she cannot recall visiting farmers.truecar.com, TrueCar's platform on the Farmers Insurance website, on April 22, 2024, she cannot recall whether she submitted her information there. *Id*. at ¶¶ 9–10. After reviewing screenshots of the TrueCar webforms, she again attests that the disclosure language was not conspicuous and that she would not have known she was agreeing to any terms of service or arbitration provision. *Id.* at ¶¶ 11–13.

Ms. Katzeff also notes that although the TrueCar webforms required users to check a box accepting the Terms of Service and Privacy Policy before proceeding, she would not have known about the arbitration clause because it was accessible only through a secondary hyperlink within the Terms of Service. *Id.* at ¶¶ 15–17. She states that the hyperlink to the Arbitration Agreement was not conspicuous and blended into the surrounding text such that she would not have noticed it. *Id*. at ¶ 18.

Taken together, Ms. Katzeff's testimony establishes that she did not knowingly or voluntarily agree to arbitrate. The arbitration language was obscured within multiple hyperlinks and not reasonably communicated in a way that could constitute informed consent. Accordingly, her declaration demonstrates that there was no mutual assent to arbitrate any claims.

Defendant's motion should be denied based on Plaintiff's declaration. *Hobbs v. Apollo Interactive, Inc.*, No. 4:19-CV-57, 2019 WL 6878863 (M.D. Ga. Dec. 17, 2019), is particularly instructive. There, a TCPA defendant sought to compel arbitration by contending that the plaintiff agreed to an arbitration provision by visiting the defendant's website. In finding no agreement to arbitrate existed, the court explained the following:

Plaintiff presented evidence that he "did not visit www.bestautoinsurance.com" and that it would have been impossible for him to access the website in the manner Defendant says he did. . . .  Plaintiff stated that he "cannot know for certain who accessed" Defendant's website and input his information, but "[w]hat [he] do[es] know for certain is that [he] did not visit www.bestautoinsurance.com." From this, a reasonable factfinder could determine that Plaintiff did not enter his personal information on Defendant's website or click "submit." So, a reasonable factfinder could conclude that Plaintiff did not assent to the website's terms, including the arbitration provision. Accordingly, there is a genuine fact dispute as to whether Plaintiff entered an arbitration agreement with Defendant, and the Court thus cannot conclude as a matter of law at this stage in the proceedings that the parties had a valid agreement to arbitrate. For this reason, Defendant's motion to dismiss in favor of arbitration is denied.

*Id.* at *1-2 (cleaned up). *Hobbs* is one in a long line of cases either denying such motions outright or concluding that a summary arbitration trial was necessary. *See, e.g., Gilliam v. Prince Health Grp. LLC*, No. 1:24-CV-00033, 2025 WL 1126545, at *8-12 (M.D. Tenn. Apr. 16, 2025) ("[O]ther than the fact that Plaintiff's name and phone number were used, Prince Health offers no evidence that Plaintiff was the person who entered the information."); *Woodard v. SmartMatch Ins. Agency, LLC*, No. 23 CV 5246, 2024 WL 4252803, at *3 (N.D. Ill. Sept. 20, 2024) (denying defendant's motion to compel arbitration where "plaintiff has identified facts showing a genuine dispute as to her acceptance of defendant's arbitration agreement").

The court in *Conrad v. Camping World Holdings Inc.*, No. 4:24-CV-171-CLM, 2025 WL 66689, at *5-6 (N.D. Ala. Jan. 9, 2025), reached a similar conclusion, reasoning that whether the plaintiff opted in to receive text messages from the defendant on a website containing an arbitration provision was put at issue and denied a similar motion to compel arbitration. There, the court first agreed that its decision "as to whether an arbitration agreement exists is simply a matter of contract," and that when a party does not "sign or otherwise enter the contract, he cannot be bound by its terms." *Id.* The court noted that the defendant provided no evidence to controvert the plaintiff's declaration, as here, that he did not agree to arbitrate any claims because he did not own

the telephone number at issue at the time of the alleged opt-in, and thus that the defendant could not "show the parties had a meeting of the minds about arbitrating claims related to the CWH text message service." *Id.*

Accordingly, Defendant is unable to meet its burden, entitling Plaintiff to wholesale denial of this motion. The court in *Conrad* did the same, holding that the defendant did not meet its burden of demonstrating a disputed factual issue with respect to the claimed provision to justify compelling arbitration. *Id.* And, like in *Hobbs*, Plaintiff made similar allegations of faulty arbitrational facts, including his physical location and other mismatched information. 2019 WL 6878863, at *1–2. Because Plaintiff does not concede that she visited the websites, she agreed to nothing.

### C.    Defendant is Not a Third-Party Beneficiary to the Arbitration Agreements and Therefore Cannot Enforce Them.

Since a valid arbitration agreement is nonexistent, the issue of who may enforce such an agreement is moot. Nevertheless, Defendant glosses over a crucial and unfavorable fact: it is not a signatory to either AutoWeb's or TrueCar's arbitration agreements. Defendant must therefore prove that it is a third-party beneficiary that is able to invoke either agreement and compel Ms. Katzeff to arbitrate her claims individually. Defendant cannot.

California law governs this inquiry. *See* Ex. A-1: TrueCar Terms of Service at ¶ 2, ECF No. 14-1; Ex. A: AutoWeb Terms of Use at 17-18, ECF No. 13-1. It provides that "a non-signatory is a third-party beneficiary only to a contract 'made expressly for [its] benefit.'" *Ngo v. BMW of N. Am., LLC*, 23 F.4th 942, 946 (9th Cir. 2022) (quoting Cal. Civ. Code § 1559). To determine whether a non-signatory is a third-party beneficiary, California courts examine the language of the contract

itself and "the relevant circumstances under which the contract was agreed to," in order to determine "(1) whether the third party would in fact benefit from the contract"; "(2) whether the motivating purpose of the contracting parties was to provide a benefit to the third party"; and (3) "whether permitting a third party to bring its own . . . action against a contracting party is consistent with the objectives of the contract and the reasonable expectations of the contracting parties." *Goonewardene v. ADP, LLC*, 434 P.3d 124, 133 (Cal. 2019). All three elements must be satisfied for a non-signatory to be a third-party beneficiary. *Id. See Faucett v. Move, Inc.*, No. 24-2631, 2025 WL 1112935 (9th Cir. Apr. 15, 2025) (finding defendant failed the three-pronged test); *In re Ford Motor Co. Dps6 Powershift Transmission Prod. Liab. Litig.*, 470 F. Supp. 3d 1117, 1125 (C.D. Cal. 2020) (same).

### 1.     Defendant is Not a Third-Party Beneficiary of the AutoWeb Arbitration Agreement.

Like in *Faucett*, the AutoWeb arbitration agreement omits any mention of, or allusion to, Defendant. Indeed, the first sentence of the arbitration agreement states, "Autoweb, Inc. and you agree to arbitrate any and all disputes and claims between us arising out of or relating to these Terms of Use[.]" Ex. A: AutoWeb Terms of Use at 13, ECF No. 13-1.

Defendant will almost certainly, and mistakenly, claim that the following provision renders it a third-party beneficiary:

> For purposes of this arbitration provision, references to "Autoweb, Inc.," "you," and "us" shall include our respective parent entities, subsidiaries, affiliates, agents, employees, predecessors in interest, successors and assigns, websites of the foregoing, as well as all authorized or unauthorized users or beneficiaries of services, products or information provided or made available under this or prior agreements between us relating to or arising from any aspect of your use or access of the sites.

*Id.* at 14. But this provision is unintelligible. It renders the definitions of "Autoweb, Inc." and "you" so broad as to be interchangeable and meaningless. It is also unclear from the language

whether these many parties are to be bound by this arbitration provision for the parties' benefit alone or whether AutoWeb intended this to be a list of third-party beneficiaries. It is hard to imagine that the parties were even aware of the entities that may be encompassed, let alone that they intended for them all to be third-party beneficiaries. Ms. Katzeff certainly would not have contemplated as much, especially considering that she would have been unaware that the AutoWeb webform would have bound her to any agreement in the first place. *See Faucett*, 2025 WL 1112935 (refusing to stretch ambiguous language like "affiliates" to encompass parties not named or known to plaintiff at the time).

The very first paragraph of the Terms of Use reveal a much narrower scope, which is relevant to the contracting parties' intent. It states that "[t]hese Terms of Use . . . for AutoWeb, Inc. and its subsidiaries and affiliated entities (collectively "AutoWeb," "Company," "we", "us" or "our") apply to our website(s)[.]" Ex. A: AutoWeb Terms of Use at 2, ECF No. 13-1. This makes it clear that AutoWeb was motivated by its own benefit. Defendant is certainly not a subsidiary and provides no evidence that it is an "affiliated entit[y.]" Indeed, the Zammito Declaration simply indicates that Defendant "is a party to agreements with third-party lead generation services" with AutoWeb. Zammito Decl. at ¶ 7, ECF No. 12. It does not follow that this transaction confers upon Defendant the status of a third-party beneficiary.

Therefore, under the first prong, it is unclear whether Defendant benefits from this contract in any regard. Under the second, there is no evidence that the parties' "motivating purpose" was to benefit Defendant. And third, there is no evidence that permitting Defendant to enforce this agreement is consistent with the parties' objectives or their reasonable expectations. It would certainly contradict Ms. Katzeff's reasonable expectations. As such, Defendant cannot enforce the AutoWeb arbitration agreement.

2.     **Defendant is Not a Third-Party Beneficiary of the TrueCar Arbitration Agreement.**

Defendant fares no better under the TrueCar arbitration agreement. Even assuming that Defendant is a "Participating Dealer" or an "Affinity Partner," which Defendant has not confirmed, Defendant cannot establish that Ms. Katzeff's motivating purpose in contracting with TrueCar was to benefit Defendant. First, Ms. Katzeff was unaware of Defendant's existence until she was subject to Defendant's telemarketing campaign. Second, Ms. Katzeff would have been unaware that this arbitration agreement even existed, let alone that it conferred a benefit to any third parties. Katzeff Decl. at ¶ 16. Accordingly, allowing Defendant to invoke this agreement would run contrary to Ms. Katzeff's reasonable expectations. Defendant is therefore not a third-party beneficiary to the TrueCar arbitration agreement and cannot compel arbitration as such.

D.     **The Arbitration Agreement is Unenforceable.**

Even if an agreement to arbitrate were formed, it would be substantively unconscionable. Arbitration agreements are "simply contracts," *Coinbase, Inc. v. Suski*, 602 U.S. 143, 151 (2024), and they are subject to the same defenses as any other contract—including the defense of unconscionability. *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010).

Even if the Court were to assume, *arguendo*, that Plaintiff interacted with the AutoWeb and TrueCar interfaces in a way the defense characterizes as "assent," the purported arbitration terms are unenforceable under California law because Defendant cannot meet its burden to show reasonably conspicuous notice and unambiguous manifestation of assent. California courts require "mutual assent" proven by a clear offer, reasonably conspicuous notice of terms, and conduct that unambiguously signifies acceptance of those specific terms; merely placing terms behind hyperlinks or embedding them within layered pages does not suffice. *See Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856–59 (9th Cir. 2022) (stating that California law requires (1)

"reasonably conspicuous notice" and (2) "unambiguous manifestation of assent," typically via language such as "By clicking, you agree" adjacent to the action button); *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175–79 (9th Cir. 2014) (explaining that browsewrap links—especially those at page bottoms—generally fail to provide inquiry notice absent additional cues); *Long v. Provide Commerce, Inc.*, 200 Cal. Rptr. 3d 117, 126–27 (Ct. App. 2016) (rejecting submerged terms presented in low-contrast type at the bottom of a cluttered page); *Sellers v. JustAnswer LLC*, 289 Cal. Rptr. 3d 1, 11–13 (Ct. App. 2021) (finding conspicuousness and proximity to assent action critical and that  hyperlink design and placement matters); *Weeks v. Interactive Life Forms, LLC*, 319 Cal. Rptr. 3d 666, 673–75 (Ct. App. 2024) (continuing skepticism of imputing knowledge of hidden terms); *Windsor Mills, Inc. v. Collins & Aikman Corp.*, 101 Cal. Rptr. 347, 351 (Ct. App. 1972) (finding no contract where offeree does not know of terms); *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 29–35 (2d Cir. 2002) (applying California law and finding the download button placed above hyperlinked terms did not provide reasonable notice).

Recent federal appellate authority is in accord. In *Valiente v. Nexgen Global, LLC*, the Eleventh Circuit affirmed denial of a motion to compel arbitration where the website's "Terms of Use" were relegated to a bottom-of-page hyperlink amid a busy layout, there was no clear statement that clicking a call-to-action manifested assent to those terms, and the supposed "double opt-in" evidence was missing from the record. 2025 U.S. App. LEXIS 29465, at *14–*26 (11th Cir. Nov. 10, 2025) (discussing browsewrap, clickwrap, and "double opt-in" theories under California and Florida law and stressing the proponent's burden).

AutoWeb's presentation is classic browsewrap. Defendant relies on AutoWeb's Terms of Use (ECF No. 13-1), which bury a sweeping arbitration clause deep within a multi-page document and purport to bind users by mere access or submission of information. See Davtyan Decl., ECF

No. 13; Ex. A (AutoWeb Terms of Use), ECF No. 13-1. Nothing in the record shows that, at the point of entering a phone number, AutoWeb displayed a conspicuous, proximate statement such as "By clicking Submit, you agree to the Terms, including arbitration," nor did it require an "I Agree" clickbox specifically tied to the legal consequence of arbitration. Instead, the terms lived behind a general hyperlink and were not set off in a manner that a reasonable user would notice before proceeding. Under *Berman*, that is not enough: hyperlinks placed at page bottoms or otherwise visually de-emphasized do not give the "reasonably conspicuous notice" California law demands, and the absence of an adjacent "by clicking, you agree" disclosure defeats any argument of unambiguous assent. See *Berman*, 30 F.4th at 857–59. Plaintiff's sworn testimony aligns with this legal deficiency: she attests the AutoWeb disclosure language was not conspicuous and that she would not have understood she was agreeing to any terms of use or arbitration merely by using the form (Katzeff Decl. ¶¶ 5–7), and that she expected only to browse deals—not to agree to arbitrate claims against a third-party dealership (Katzeff Decl. ¶ 8). On this record, AutoWeb's design fails both prongs of *Berman*: no reasonably conspicuous notice and no unambiguous manifestation of assent.

TrueCar's interface—presented through the Farmers portal—fares no better. Defendant's own evidence shows a single checkbox to "accept TrueCar's Terms of Service and Privacy Policy" as a condition to proceeding, but the arbitration terms are not visible there; instead, they appear only via a secondary, in-text hyperlink labeled "Arbitration Agreement" inside the Terms of Service. See Shindle Decl. ¶ 8, ECF No. 14; Ex. A-1 (TrueCar Terms of Service), ECF No. 14-1; Ex. A-2 (TrueCar Arbitration Agreement), ECF No. 14-2. Plaintiff explains that the hyperlink to the Arbitration Agreement "blends into the surrounding text" and would not have been noticed (Katzeff Decl. ¶¶ 15–18). Under *Berman*, an online merchant must place users on "reasonably

conspicuous" notice and pair that notice with an "unambiguous" assent mechanism. 30 F.4th at 856–59. A generic checkbox referencing "Terms of Service"—with the operative arbitration clause tucked behind a second hyperlink within those Terms—does not satisfy that standard; it obscures the material waiver and forces users to navigate multiple layers to discover it. California courts routinely reject enforcement where, as here, arbitration is nested in secondary links or buried within text that is neither visually distinct nor adjacent to a clear, transaction-blocking assent statement. See *Nguyen*, 763 F.3d at 1178–79; *Sellers*, 289 Cal. Rptr. 3d at 11–13; *Long*, 200 Cal. Rptr. 3d at 126–27; *Weeks*, 319 Cal. Rptr. 3d at 673–75. The Eleventh Circuit's analysis in *Valiente* is directly on point and strongly persuasive: it rejects both browsewrap and purported clickwrap where (1) the terms hyperlink is small, low-contrast, and distant from the action button on a busy page; (2) the call-to-action text does not tell the user that clicking manifests assent to the Terms; and (3) the proponent offers no reliable evidence of a subsequent "double opt-in" that actually incorporates arbitration. 2025 U.S. App. LEXIS 29465, at *15–*26. Those same defects pervade the TrueCar flow here.

Nor can Defendant salvage enforceability by pointing to TrueCar's "Participating Dealers"/"Affinity Partners" language in the stand-alone Arbitration Agreement. ECF No. 14-2. That provision presupposes a valid formation of an arbitration contract in the first place; California law will not enforce third-party-beneficiary or incorporation-by-reference theories when the user never received reasonable notice or clearly assented to the governing terms. See *Berman*, 30 F.4th at 856–59; *Nguyen*, 763 F.3d at 1175–79; *Windsor Mills*, 101 Cal. Rptr. at 351. And to the extent Defendant gestures at any "double opt-in" or post-submission confirmation to cure notice, the record contains no such evidence tied to arbitration (or to the Terms) that would meet the

proponent's burden. See *Valiente*, 2025 U.S. App. LEXIS 29465, at *24–*26 (rejecting a similar "double opt-in" theory where the proponent failed to supply the actual email flow).

Finally, the transactional context reinforces non-enforcement. Plaintiff attests she used these sites to browse inventory or obtain a free quote—not to enter a binding dispute-resolution contract with an unknown dealership (Katzeff Decl. ¶¶ 7–8, 11–14). California courts weigh context in assessing whether the interface would put a reasonably prudent user on notice that legal rights are being waived; where the nature of the interaction (e.g., price lookup, quote, or browsing) does not itself signal contract formation, the onus on the drafter to deploy conspicuous, proximate, and unequivocal assent cues is even higher. See *Berman*, 30 F.4th at 856–59; *Sellers*, 289 Cal. Rptr. 3d at 11–13; *Long*, 200 Cal. Rptr. 3d at 126–27. AutoWeb and TrueCar did the opposite— using de-emphasized hyperlinks and layered documents that a user could proceed past without encountering any clear "by clicking, you agree" disclosure tied to arbitration.

In short, Defendant has not carried its burden under California law to show that Plaintiff had reasonably conspicuous notice of an arbitration provision or that she unambiguously manifested assent to be bound by it. The AutoWeb Terms (ECF No. 13-1) and TrueCar flow (ECF Nos. 14, 14-1, 14-2) reflect browsewrap-style links and nested, secondary hyperlinks to arbitration, not a conspicuous clickwrap with explicit, proximate assent language. Plaintiff's sworn account confirms the inconspicuous design and the absence of any knowing agreement to arbitrate (Katzeff Decl. ¶¶ 3–18). The arbitration provisions are not enforceable, and the motion to compel arbitration should be denied.

## V.    <u>CONCLUSION</u>

Defendant asks this Court to compel a consumer into a private forum based on web pages that hide material terms in hyperlinks and layered documents, without a clear statement at the point

of action that arbitration is part of the deal. The evidentiary record does not show that Plaintiff knowingly agreed to arbitrate: AutoWeb's terms are buried within a multi-page document not tied to an affirmative "I agree" act (ECF No. 13-1), and TrueCar's arbitration provisions are nested behind a second hyperlink inside the Terms of Service, visually indistinguishable from adjacent text (ECF Nos. 14-1, 14-2). Plaintiff attests that none of this was conspicuous to her, that she expected only to view inventory or receive a quote, and that she did not understand she was agreeing to arbitrate claims—much less claims against Toyota of Dartmouth, which is neither named nor shown to be an expressly intended beneficiary of those documents (Katzeff Decl. ¶¶ 3– 18).

Because Defendant has not established the basic predicates of an arbitration agreement— reasonable notice, unambiguous assent, and a basis to enforce—the motion should be denied in full and this case should proceed in this Court. Alternatively, if the Court determines that any genuine dispute of material fact exists regarding formation or enforceability, Plaintiff respectfully requests targeted, expedited discovery focused on (1) the precise versions and deployment of the AutoWeb and TrueCar interfaces at the relevant times, (2) the placement, wording, and visual presentation of any disclosures and hyperlinks, (3) the existence and content of any alleged confirmations or follow-up communications tied to arbitration, and (4) Defendant's theory of third-party-beneficiary enforcement; followed by a summary trial on formation. On any path, the present record does not justify compelling arbitration.

Date: November 13, 2025                    PLAINTIFF,
                                           By her attorneys,

                                 By:      _s/ Anthony I. Paronich_

                                           Anthony I. Paronich
                                           PARONICH LAW, P.C.
                                           350 Lincoln Street, Suite 2400
                                           Hingham, MA 02043
                                           Tel: (617) 485-0018
                                           Fax: (508) 318-8100
                                           anthony@paronichlaw.com