UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHALAMAAR MUHAMMAD, individually and on behalf of all others similarly situated, ) ) ) Plaintiff, ) ) v. ) ) RATES VIP, LLC, ) ) Defendant. ) | No. 25-cv-11862<br><br>Judge April M. Perry |

## **OPINION AND ORDER**

Shalamaar Muhammad ("Plaintiff") alleges that Rates VIP, LLC ("Defendant") violated the Telephone Consumer Protection Act ("TCPA") by sending Plaintiff unwanted marketing text messages. Defendant contends that Plaintiff's claim is subject to mandatory arbitration and has moved to compel arbitration and stay this action. Doc. 11. For the reasons discussed below, Defendant's motion to compel arbitration is denied.

## BACKGROUND

Defendant markets insurance to consumers via text messages after having received their contact information from companies like TheCoverageGoat.com and Coverage Professor LLC. Doc. 12-2 ¶ 3-4.[1] TheCoverageGoat.com and Coverage Professor LLC, in turn, theoretically receive this contact information directly from consumers who agreed to receive such marketing

---

[1] The Declaration of Blaine Beichler cited herein was attached to Defendant's motion to dismiss, Doc. 12-2, and relied upon by both parties in their briefing on the motion to compel arbitration. Given that Plaintiff has not challenged its use in conjunction with the motion to compel arbitration, the Court will consider Beichler's Declaration as part of the record for this motion.

offers. *Id*. At issue in this case is whether Plaintiff did provide her[2] contact information to TheCoverageGoat.com and Coverage Professor LLC, and if she did, to what extent the mandatory arbitration clause in their Terms and Conditions compels Plaintiff to arbitrate claims she has against Defendant.

TheCoverageGoat.com and Coverage Professor LLC websites are identical for all purposes material to this action. Upon visiting each website, a consumer arrives at a page that advertises insurance savings and allows the consumer to advance to the next page by clicking a button that states, "Get Free Quote." *Id.* ¶ 15. The subsequent webpages request personal information from the consumer about their vehicle, gender, birth date, marital status, accident history, homeownership status, email address, and home address. *Id.* ¶¶ 16-32. The final page is titled "Last Step: Phone Number" and contains a field for the consumer to enter their phone number above a large button labeled "Get My Quote." *Id.* ¶ 33. Below the button and the statement "Your car insurance quotes are ready," the websites list various terms the consumer agrees to by clicking "Get My Quote." *Id.* ¶¶ 33-34. The screen is displayed below:

---

[2] Plaintiff is referred to throughout the complaint as "him/he" but in Plaintiff's responsive brief as "she/her." *Compare* Doc. 1 ¶¶ 5, 19, 37, 41 *with* Doc. 19 at 1, 6, 8. The Court uses "she/her" pronouns in this opinion, as those are the most recent provided by Plaintiff.

2

**LAST STEP: PHONE NUMBER**

# Contact Number

Phone Number

**Get My Quote**

✓ Your car insurance quotes are ready

By clicking 'Get My Quote' and submitting this form, I provide an electronic signature and express written consent to the SMS terms below and to receive marketing communications for insurance products & services via automatic telephone dialing system, including calls, SMS/MMS, pre-recorded calls or artificial voice messages from thecoveragegoat.com and its marketing partners. Message and data rates may apply. I understand I may opt-out of phone and SMS communication by replying 'STOP' or 'HELP' for more info, or by contacting contact@thecoveragegoat.com. I understand I will receive marketing communications to the phone number provided, which includes wireless numbers, and if applicable, numbers previously registered on the Federal and State DNC registries. See SMS Policy for more details. I certify that I am a US resident over 18, and all information submitted with this request is true and accurate to the best of my knowledge. Consent is not a condition to receive services or purchase products from thecoveragegoat.com and if I do not consent, I can call (877) 512-3977 to speak to a professional to obtain an insurance quote. I acknowledge my consent can be revoked at any time. I understand and agree to the Terms and Conditions including mandatory arbitration.

By clicking 'Get My Quote', you consent to thecoveragegoat.com saving the information you entered and sharing it with insurance carriers so you can get the most up-to-date quotes, no matter what device you're using. You also agree to thecoveragegoat.com's Privacy Policy and Terms of Service.

*Id.* ¶ 33. Among other terms, the "Last Step" page requires that the consumer give "express written consent … to receive marketing communications for insurance products & services via automatic telephone dialing systems, including calls, SMS/MMS, pre-recorded calls or artificial voice messages from thecoveragegoat.com and its marketing partners." *Id.* To the extent a consumer wants to learn more about "marketing partners," they can click on the blue hyperlink, which leads to a page that lists Defendant as one such marketing partner. *Id.* ¶ 36. The "Last Step" page also states that consumers "understand and agree to the Terms and Conditions including mandatory arbitration." *Id.* ¶ 33. The phrase "Terms and Conditions" is also hyperlinked and leads to a page that includes those terms. *Id.* ¶ 35. The beginning of this page states the following:

THIS AGREEMENT CONTAINS AN ARBITRATION AGREEMENT

3

AND CLASS ACTION WAIVER THAT WAIVE YOUR RIGHT TO A COURT HEARING OR JURY TRIAL OR TO PARTICIPATE IN A CLASS ACTION. ARBITRATION IS MANDATORY AND THE EXCLUSIVE REMEDY FOR ANY AND ALL DISPUTES UNLESS SPECIFIED BELOW OR UNLESS YOU OPT-OUT.

*Id.* ¶ 49. The Terms and Conditions also set forth an "Agreement to arbitrate" which provides:

> You and we each agree that any and all disputes or claims that relate to or arise from your use of or access to our Services, or any products or services sold, offered, or purchased through our Services, including any contact from our subsidiaries, affiliates, or agents including, but not limited to, All Web Leads, Inc., shall be resolved exclusively through final and binding arbitration between us and you, or between our subsidiaries, affiliates, or agents and you, rather than in court, except that you may assert claims in small claims court, if your claims qualify. The Federal Arbitration Act governs the interpretation and enforcement of this Agreement to Arbitrate section (this "Agreement to Arbitrate").

*Id.* ¶ 50. The Terms and Conditions reiterates that the consumer "consent[s] to receive… text and SMS messages… from us and the marketing partners….and affiliates or Marketing Partners may send you SMS messages." *Id.* ¶51.

In October 2024, Plaintiff began receiving text messages from Defendant. Doc. 1 ¶ 14. After receiving these text messages for a few days, Plaintiff sent a "Stop" opt-out request and Defendant acknowledged this request. *Id.* ¶¶ 15-16. Plaintiff then received another text message from Defendant on August 1, 2025. *Id.* ¶¶ 15-17. Defendant contends that Plaintiff consented to receive text messages and agreed to TheCoverageGoat.com's Terms and Conditions on October 10, 2024 and to Coverage Professor LLC's Terms and Conditions on August 1, 2025. Doc. 12-2 ¶¶ 9-10. Plaintiff states that she has no recollection of ever visiting TheCoverageGoat.com or Coverage Professor LLC's website or seeing the terms listed therein. Doc. 20 ¶¶ 3-13.

## LEGAL STANDARD

The Federal Arbitration Act ("FAA") authorizes a federal district court to compel a dispute between parties to arbitration if it finds that (1) the parties formed a valid, written

4

agreement to arbitrate; (2) the dispute falls within the scope of that agreement, and (3) a party refuses to arbitrate. *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005). The FAA requires courts to enforce arbitration agreements according to their terms and puts them on an equal footing with other contracts. *A.D. v. Credit One Bank, N.A.*, 885 F.3d 1054, 1060 (7th Cir. 2018). Ordinary principles of state contract law are used to determine whether parties formed an agreement to arbitrate. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).[3] Since "arbitration agreements are contracts, a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Id.* (internal quotations omitted).

In deciding a motion to compel arbitration, courts apply the same standard as is used in deciding motions for summary judgment. *See Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002). Specifically, "[a] district court may conclude as a matter of law that parties did or did not enter into an arbitration agreement only if no genuine dispute of material fact exists as to the formation of the agreement." *Wallrich v. Samsung Elecs. Am., Inc.*, 106 F.4th 609, 618 (7th Cir. 2024). In deciding whether there is any genuine issue of material fact, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [her] favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (discussing standard used at summary judgment).

## ANALYSIS

Defendant argues that Plaintiff is compelled to arbitrate this matter due to her opt-in to TheCoverageGoat.com's Terms and Conditions on October 10, 2024 and to Coverage Professor

---

[3] This Court applies Illinois contract law to this dispute as neither party has argued that the result would be different under any other relevant state's law. *See Sosa v. Onfido, Inc.*, 8 F.4th 631, 637 (7th Cir. 2021) (noting that a district court in Illinois applies Illinois law unless a party argues for application of another jurisdiction's law and demonstrates an outcome-determinative difference).

5

LLC's Terms and Conditions on August 1, 2025. Plaintiff responds that there is a genuine dispute of fact as to whether she ever agreed to those terms, and that even if she did, no valid agreement to arbitrate was formed with Defendant. The Court is not persuaded by Plaintiff's first argument, but agrees with the second.

The Court begins with the issue of whether there is a genuine dispute of fact that Plaintiff agreed to the Terms and Conditions on the TheCoverageGoat.com and Coverage Professor LLC's websites. Defendant has submitted a declaration from Blaine Beichler, Defendant's Head of Operations and Business Development, which states that Beichler has the ability to audit the consumer opt-in flows from TheCoverageGoat.com and Coverage Professor LLC. *See* Doc. 12-2 at ¶¶ 6-7. According to Beichler, those records show that Plaintiff agreed to the relevant Terms and Conditions on October 10, 2024 and August 1, 2025, respectively. *Id*. ¶¶ 8-11. In response, Plaintiff submitted her own declaration stating that she does not remember ever visiting TheCoverageGoat.com or Coverage Professor LLC's website and does not recognize their terms. Doc. 20 ¶¶ 3-13.

The problem for Plaintiff is that a party trying to avoid arbitration must identify specific evidence in the record demonstrating a material factual dispute. *See Tinder*, 305 F.3d at 736. Plaintiff's statement that she does not remember having visited the websites at issue is not evidence of any dispute of fact at all; it instead reflects the absence of knowledge of the relevant facts. *See id.* (finding that an averment that one "does not recall seeing or reviewing" an arbitration agreement does not raise a genuine issue of fact). If Plaintiff had stated that she did not visit the websites at issue, that would create a material dispute of fact. *See Kass v. PayPal, Inc.*, 75 F.4th 693, 705 (7th Cir. 2023) (finding that a plaintiff's averment that she did not receive an arbitration agreement creates a genuine dispute of fact). But because Plaintiff has not done so,

6

the Court finds that she has not succeeded in demonstrating a genuine dispute of fact as to the formation of an arbitration agreement between Plaintiff and TheCoverageGoat.com and Coverage Professor LLC.

Defendant is of course not TheCoverageGoat.com or Coverage Professor LLC, which brings us to the next question of whether Defendant can reap the benefits of those arbitration agreements. A non-signatory to a contract typically has no right to invoke an arbitration provision contained in that contract. *See Caligiuri v. First Colony Life Ins. Co.*, 742 N.E.2d 750, 755-56 (Ill. App. Ct. 2000). This is because Illinois courts recognize a "strong presumption against conferring contractual benefits on noncontracting third parties." *Marque Medicos Farnsworth, LLC v. Liberty Mut. Ins. Co.*, 117 N.E.3d 1155, 1159 (Ill. App. Ct. 2018). Instead, for a non-party to a contract to qualify as a third-party beneficiary, the language of the contract must show that "the contract was made for the direct, not merely incidental, benefit of the third person." *Martis v. Grinnell Mut. Reinsurance Co.*, 905 N.E.2d 920, 924 (Ill. App. Ct. 2009). This intention "must be shown by an express provision in the contract identifying the third-party beneficiary by name or by description of a class to which the third party belongs." *Id.* "[T]he third-party beneficiary doctrine to compel arbitration is properly applied when the non-signatory was to derive a benefit from the agreement and where the arbitration clause itself is susceptible to this interpretation." *Coatney v. Ancestry.com DNA, LLC*, 93 F.4th 1014, 1024 (7th Cir. 2024) (internal quotations omitted).

Here, the arbitration clause is not susceptible to the interpretation that a "marketing partner" like Defendant is intended to benefit from the arbitration agreement. To the contrary, the arbitration agreement states that arbitration shall take place "between [TheCoverageGoat.com / Coverage Professor LLC] and you or between our subsidiaries, affiliates, or agents and you."

7

Doc. 12-2 ¶ 50. Defendant presents no evidence that in addition to being a "marketing partner" it is also a "subsidiary, affiliate, or agent" of TheCoverageGoat.com or Coverage Professor LLC, and therefore it has not shown that it is an intended third-party beneficiary of the arbitration agreement. *See Coatney*, 93 F.4th at 1025 (finding that arbitration language referring to "you and [defendant]" and "disputes between us" indicates an intent only to bind those two parties, but not others, to arbitration); *see also Washington v. Persona Identities, Inc.*, 254 N.E.3d 394, 404 (Ill. App. Ct. 2024) ("Unless a nonparty is expressly named or its class described, a generic arbitration clause—no matter how broad—cannot show an intent to directly benefit the nonparty."). The fact that "marketing partners" receive certain incidental benefits under the Terms and Conditions, like the right to send consumers text messages, does not make them a third-party beneficiary of the arbitration clause under the law – especially when they are explicitly excluded from the list of those to whom such benefit applies. *See id.* ("That the contracting parties know, expect, or even intend that others will benefit from their agreement is not enough to overcome the presumption that the contract was intended for the direct benefit of the parties."); *Sosa v. Onfido, Inc.*, No. 1:20-CV-04247, 2021 WL 38141, at *4-5 (N.D. Ill. Jan. 5, 2021) (finding a defendant could not compel arbitration when "the plain text of the document makes clear that the arbitration provision was not intended to extend to" that defendant), *aff'd*, 8 F.4th 631 (7th Cir. 2021).[4] If TheCoverageGoat.com and Coverage Professor LLC intended to confer this particular benefit upon Defendant, they could have (and should have) stated it explicitly. *See Holmes v. Godinez*, 991 F.3d 775, 780 (7th Cir. 2021) ("Illinois law imposes a strong presumption against provisions that easily could have been included but were not.")

---

[4] *Brown v. Worldpac, Inc.*, No. 17-CV-6396, 2018 WL 656082 (N.D. Ill. Feb. 1, 2018) is distinguishable as the third-party beneficiary that sought to compel arbitration in *Brown* was part of a class explicitly referenced within the arbitration agreement itself.

8

(internal quotations omitted). Instead, TheCoverageGoat.com and Coverage Professor LLC drafted extremely broadly when dictating the types of disputes that would be subject to arbitration – including those that related to Defendant's services – and much more narrowly when dictating the parties who would be included in that arbitration – excluding Defendant. For these reasons, Defendant cannot compel arbitration.

## CONCLUSION

Defendant's motion to stay and compel arbitration is denied.

Dated: March 16, 2026

*April M Perry*
_____
APRIL M. PERRY
United States District Judge

9